**The below described is SIGNED.**

(ts)

**Dated: January 14, 2010** _William J. Thurman_



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Chief Judge**

_____

*Order prepared and submitted by:*

Anna W. Drake, No. A0909
ANNA W. DRAKE, P.C.
175 South Main Street, Suite 1250
Salt Lake City, UT 84111
Telephone: (801) 328-9792
Facsimile: (801) 530-5955
E-mail: annadrake@att.net

Attorney for Defendant Rex G. Wheeler, Jr.

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Bankruptcy No. 08-20300 |
| REX G. WHEELER, JR.,, | Chapter 7 |
| Debtor. | Judge William Thomas Thurman |
| MARK ELGGREN, | |
| Plaintiff, | Adversary Proceeding No. 08-02237 |
| vs. | |
| REX G. WHEELER, JR., | |
| Defendant. | |

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Findings and Conclusions.wpd

**Filed: 12/28/09**

The trial on this matter was held on January 6, 2010, before the Honorable William T. Thurman, Bankruptcy Judge. Bruce L. Richards appeared as counsel for plaintiff, and Anna W. Drake appeared as counsel for defendant. The Court heard the testimony of the witnesses, reviewed the exhibits admitted, and considered the arguments of counsel.

BASED upon the foregoing, the Court now makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### Parties, Jurisdiction and Venue

1. The jurisdiction of the court is properly invoked under 28 U.S.C. § 1334. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2). The jurisdiction of the court is not disputed and is hereby determined to be present. *[Amended Pretrial Order[1] at ¶ 1]*

2. Venue is laid in the Central Division of the District of Utah. *[PO at ¶ 1]*

3. Plaintiff is a resident of Kaysville, Utah. *[PO at ¶ 4(1)]*

4. Defendant is a resident of Salt Lake County, Utah. *[PO at ¶ 4(2)]*

### Nature of the Obligation

5. Plaintiff delivered by electronic transfer on September 21, 2006 $140,000.00 to Account 003164126 at Zions Bank with Rex Wheeler as account holder. *[PO at ¶ 4(3)]*

---

[1] The "Amended Pretrial Order" shall hereinafter be referred to as "*PO at ____*".

6. Defendant delivered or caused to be delivered to Plaintiff on September 22, 2006, two promissory notes. The $140,000.00 note is the note subject of this action. *[PO at ¶ 4(4)]*

7. The promissory note is subject to interest at 24% per annum payable monthly. *[PO at ¶ 4(5)]*

8. The principal portion of the $140,000.00 note has not been paid but Plaintiff did receive some interest payments. *[PO at ¶ 4(6)]*

### Defendant's Representations

9. Defendant never met with nor spoke with Plaintiff during the time period covered by this action, and Defendant was not aware of the $140,000.00 note until after it had been executed. *[Testimony of Rex G. Wheeler]*[2]

10. Defendant never made any statements to Plaintiff in connection with his investment. *[Wheeler Testimony]*

11. Defendant did not make any representations to Plaintiff and did not disclose, or fail to disclose, any information, to Plaintiff, in connection with this transaction. *[Wheeler Testimony]*

12. Plaintiff specifically did not make any of the following statements *[Wheeler Testimony]* :

(A) Plaintiff would be investing in a real estate development being developed in conjunction with a golf course in California;

(B) Plaintiff's investment would be secured by a trust deed on real property;

---

[2] "Testimony of Rex G. Wheeler" shall hereinafter be referred to as "*Wheeler Testimony*".

    (C) Plaintiff's money would be used only for the agreed upon investment and not for other purposes;

    (D) Defendant was a principal in or associated with the California real estate development;

    (E) Plaintiff's investment would earn 24%;

    (F) Plaintiff's investment would be repaid no later than completion of the project;

    (G) Plaintiff was required to keep funds invested for a minimum of one year;

    (H) Plaintiff could get his investment back by providing three months notice;

  13. There was no promise of any specific investment for Plaintiff's funds. *[Wheeler Testimony]*

  14. Defendant never told Plaintiff that his money was going into California. *[Wheeler Testimony]*

  15. Defendant was not aware of a "real estate development being developed in conjunction with a golf course in California." Defendant was aware of the Marker's Club and he was entertaining the option of becoming an owner; however, he chose to invest money with Wade Slater (principal of Marker) and received a promissory note from Wade Slater which has not been paid. Mr. Slater was supposed to deliver the title to those properties once he had obtained the necessary funds; however, he experienced cash flow problems and began to borrow money from other investors and delivered trust deeds to them. Defendant was never a principal in the Marker's Club. *[Wheeler Testimony]*

16. Defendant did not disclose, and was not required to disclose, any of the following *[Wheeler Testimony]*:

    (A) Defendant was not an owner, officer or manager and/or otherwise involved with the development to be invested in.

    (B) Defendant decided not to participate in or otherwise did not participate in the development.

    (C) Plaintiff's funds were not invested in the golf course development in California or in any other investments of Defendant.

    (D) Plaintiff's money would be commingled with other personal and business funds of Defendant.

    (E) Plaintiff's money was not held in a separate account, an escrow account or a trust account for Plaintiff's benefit unless or until invested.

    (F) Plaintiff's money was used, in whole or part, to pay personal expenses of Defendant.

    (G) Defendant was being paid a fixed interest rate exceeding 50% per annum for amounts obtained for other parties and businesses.

    (H) Plaintiff's funds were being used, in whole or in part, to repay other investors.

    (I) Certain funds received from Plaintiff were used for personal expenses.

17. Defendant did not make any misrepresentations to Plaintiff. *[Wheeler Testimony]*

18. Plaintiff's investment did in fact earn a 24% return during the time that Wade Sleater was making payments to Defendant. *[Wheeler Testimony]*

### Defendant's Duties to Plaintiff

19. Defendant did not act as an investment advisor and/or agent for placement of Plaintiff's money. *[Wheeler Testimony]*

20. Defendant did not act in a fiduciary capacity with respect to Plaintiff and did not owe the Plaintiff a fiduciary duty. *[Wheeler Testimony]*

21. Plaintiff did not commit any acts of defalcation in connection with the Plaintiff or the subject promissory note. *[Wheeler Testimony]*

22. Defendant did not commit larceny in connection with the Plaintiff's investment. *[Wheeler Testimony]*

23. Defendant was not aware that Plaintiff's money was commingled with other funds and that his personal books and records, as well as the books and records of his related entities, were not being maintained as separate accounts. *[Wheeler Testimony]*

24. Significant commingling of cash, assets and liabilities took place among Defendant, Bedrock Marketing, LLC ("Bedrock"), The Ockham Group, LLC ("Ockham LLC"), Enlightened Management, LLC ("Enlightened"), and Property Certain, LLC (the "related entities"). *[PO at ¶ 4(7)]*

25. Randy Van Ness (as controller of The Ockham Group and other related entities), maintained the books and records of Defendant's companies. Mr. Van Ness had never discussed his bookkeeping procedures with Defendant. When Defendant became aware that there may have been problems with Mr. Van Ness's bookkeeping practices, Defendant immediately contracted with Brian Dureya to research the issue. Mr. Dureya ordered an audit of the books and records through an

accounting firm of his choice. Additional bookkeepers were hired to eventually replace Mr. Van Ness. Prior to this point, Defendant was unaware that there were any problems with the financial records of either himself or his companies. *[Wheeler Testimony]*

26. Significant amounts of cash were transferred between the Defendant and related entities. *[PO at ¶ 4(8)]*

27. Transfers from Defendant or related entities were made to fund or pay operating expenses of Defendant or another related entity. *[PO at ¶ 4(9)]*

28. The cash transferred between the Defendant and related entities appears to have included cash from investors, loans, and other sources. *[PO at ¶ 4(10)]*

29. More than $966,000 was disbursed from Bedrock to or for the benefit of Defendant, including disbursements to Defendant's ex-wife, Jodi Wheeler, for draws, car repairs, a car purchase, personal expenses, cash withdrawals, loan payments, etc. *[PO at ¶ 4(11)]*

30. At the 341 Meeting, the Trustee asked Defendant whether, in Defendant's mind, the assets and liabilities of Bedrock, Property Certain, Ockham LLC and Enlightened were "commingled." Defendant responded with, "Yes." *[PO at ¶ 4(12)]*

31. Defendant testified further regarding commingling as follows *[PO at ¶ 4(13)]*:

Mr. Jubber: And, there's no functioning way in your mind to be able to separate the assets and liabilities of these four entities?

Mr. Wheeler: It would be a challenge at best.

Mr. Jubber: Why do you say that?
Mr. Wheeler: The way the books were kept.[3]

Later in the 341 meeting:

Mr. Jubber: …You said that most of the money came into Bedrock Marketing?

Mr. Wheeler: Yes…

Mr. Jubber: Okay. And, then from that point it was used to pay debts of a number of different entities?

Mr. Wheeler: Not necessarily debts. It was used to invest with other entities, loaning money to different investors that needed capital for real estate projects and other various needs so it wasn't just debt.

32. Defendant did not maintain a separate account, an escrow account or trust account for Plaintiff's benefit unless or until Plaintiff's money was invested. *[PO at ¶ 4(14)][PO at ¶ 1]*

33. Defendant did not maintain a separate account, an escrow account or trust account for Plaintiff's benefit; however, Plaintiff knew where Defendant had deposited his funds and never inquired whether those funds were being held in escrow. *[Wheeler Testimony]*

34. Defendant's money was commingled with other personal and business funds. *[Wheeler Testimony]*

35. Defendant made no representations to Plaintiff regarding whether or not his money was held in a separate account, an escrow account or trust account for Plaintiff's benefit. Defendant used Plaintiff's money, in whole or part, to pay personal expenses of Defendant and/or to repay other investors. *[Wheeler Testimony]*

36. Neither Chris Moore nor other persons acted as agents of Defendant in obtaining Plaintiff's $140,000.00. *[Wheeler Testimony]*

37. Investors were not repaid with other investors monies, and investors were not being paid from interest payments on other investments. *[Wheeler Testimony]*

38. Since Defendant did not speak with Plaintiff or make any misrepresentations to Plaintiff, Plaintiff did not rely upon possible representations by Defendant. *[Wheeler Testimony]*

39. Since Defendant did not speak with Plaintiff, Plaintiff did not rely upon any failures to disclose information by Defendant. *[Wheeler Testimony]*

40. Plaintiff did not plead agency as a cause of action in the complaint, and thus Plaintiff cannot assert that it relied upon any misrepresentations or failures to disclose by any purported agents of Defendant.

41. Any representations or failures to represent various facts by third parties were not material to Plaintiff investing with Defendant.

42. To the extent that third parties made misrepresentations or failed to disclose information to Plaintiff, Defendant is not charged with those statements or omissions.

43. Plaintiff's claims are barred by the doctrine of equitable estoppel, failure of consideration and laches.

44. Plaintiff has incurred damages in the amount of $_____ plus interest at 24% per annum from January 18, 2008 until the date paid.

45. Plaintiff has incurred court costs and attorneys fees in this action in the sum of $_____. *[PO at ¶ 4(16)]*

46. Plaintiff has failed to prove facts sufficient to support a claim for nondischargeability pursuant to 11 U.S.C. § 523(a)(2).

47. Plaintiff has failed to prove facts sufficient to support a claim for nondischargeability pursuant to 11 U.S.C. § 523(a)(4).

## CONCLUSIONS OF LAW

1. Defendant's actions do not constitute the obtaining of money or an extension of credit by false pretenses, a false representation or actual fraud.

2. Defendant's actions do not constitute defalcation while acting in a fiduciary capacity.

3. Defendant's actions do not constitute larceny.

4. Plaintiff's has failed to meet its burden that its claim should be held nondischargeable within the meaning of 11 U.S.C. §§ 523(a)(2) and (4).

5. All of Plaintiff's claims against Defendant are discharged herein.

6. Plaintiff is not entitled to an award of punitive damages against the Defendant.

---------------------------------------------------------ooo0ooo---------------------------------------------------------